IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENDEL STAFFORD**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil No. **09-278-JPG** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert in accordance with 28 U.S.C. §§ 636(b)(1)(B) and (C).

Pursuant to 42 U.S.C. § 405(g), plaintiff Kendel Stafford, represented by counsel, is before the Court seeking review of the final decision of the Social Security Administration denying his Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423, or even a Period of Disability (POD) pursuant to 42 U.S.C. § 416(i). **(Doc. 2).** In addition to submitting the administrative record **(Doc. 9 (hereinafter "R."))**, plaintiff and defendant have fully briefed their positions. **(Docs. 16 and 22).** Plaintiff has moved for summary judgment. **(Doc. 16).**

Plaintiff Stafford's physical ailments are not in dispute, *per se*. Rather, this appeal centers around the sufficiency of the evidence and legal analysis by Administrative Law Judge ("ALJ") Thomas R. Bryan. More specifically, plaintiff argues that:

1. The ALJ's decision is not supported by substantial evidence relative to:

   a. Plaintiff's purported need to alternate between sitting, standing and lying down; and

1

      b.    Plaintiff's purported inability to stoop, which was not discussed by the ALJ;

  2.    The ALJ did not give adequate weight to Dr. Tippett's opinion, which precluded sedentary work; and

  3.    It was plain error not to obtain evidence from a vocational expert.

**(Doc. 16)**. The "Essential Facts" portion of plaintiff's combined motion and brief also contains the following statement:

> The Administrative Law Judge did not address whether Mr. Stafford should be considered for a closed period of disability during the nearly two year stretch between his second work injury on May 30, 2004 and his release by Dr. Cushman in March 2006.

**(Doc. 16, pp. 6-7)**. The defendant argues that any argument regarding entitlement to a period of disability has not been properly or adequately presented and is therefore waived. **(Doc. 22)**.

## Overview of the Evidence

Plaintiff applied for DIB, alleging the onset of disability as of May 30, 2004, due to a back injury sustained at work in September 2003[1]. **(R. 69-70)**. At the time plaintiff was injured, he was 34 years old, and had been working as a deckhand on a river barge, which can be characterized as "very heavy" exertional work. **(*See* R. 70 and 164; and 20 C.F.R. § 404.1567)**. Plaintiff's self-described work history includes no other relevant jobs. **(R. 70)**.

After his initial injury in 2003, plaintiff worked every other month at light duty, until May 30, 2004. **(R. 70)**. On November 23, 2004, plaintiff had a lumbar discectomy and nerve

---

[1] Plaintiff injured his back on September 3, 2003, and was experiencing pain in his left buttock, radiating down his left leg. **(R. 223)**. On December 12, 2003, a Functional Capacity Evaluation was performed and plaintiff was deemed able to return to heavy work as a deckhand, although plaintiff reported low back pain. **(R. 216)**.

root decompression, and a lumbar laminectomy at L5-S1.  **(R. 176-177)**.  Plaintiff was doing well two weeks, post-op, until he slipped and fell, causing pain to again run down his left leg.  **(R. 174)**.  A Functional Capacity Evaluation performed by plaintiff's physical therapist on February 8, 2005, indicates plaintiff was able to perform very heavy work, although he rated his pain at 3-4 on a 10-scale.  **(R. 164-165)**.  Plaintiff was deemed able to return to his job as a deckhand, without restrictions, except that plaintiff was limited to crawling only occasionally.  **(R. 165-166)**.  However, an MRI revealed disc herniation at L4-5, to the left of the previous operative site, consistent with plaintiff's complaint of constant sharp, throbbing pain that radiated down his left leg.  **(R. 148, 150 and 162)**.  Conservative treatment was unsuccessful.  **(R. 147-148)**.

On March 8, 2005, plaintiff had a second surgery, a lumbar discectomy and nerve root decompression at L4-5.  **(R. 141)**.  One month later, on April 7, 2005, plaintiff's surgeon, Dr. Gregory Langford, reported a stable neurological exam, and complete resolution of plaintiff's radicular leg pain, although plaintiff continued to complain of back and left hip pain.  **(R. 136)**.  X-rays showed the vertebral height, spacing and alignment were all normal.  **(R. 135)**.  A lesion was identified on the femoral head of plaintiff's left hip.  **(R. 129, 131 and 133)**.  Plaintiff was to undergo physical therapy for three weeks.  **(R. 136)**.

According to plaintiff's August 27, 2005, Activities of Daily Living Questionnaire, at that time he could not lift anything, he could not sit or stand for very long, and he needed to hold on to furniture and counters for balance, although he did not use a cane or other assistive device.  **(R. 82-85)**.  Nevertheless, a Residual Functional Capacity Assessment in October 2005, by Dr.

Pardo Julio[2], an agency physician, indicates plaintiff was capable of occasionally lifting 10 pounds and frequently lifting lesser amounts, standing and walking a total of two hours during an eight-hour work day, sitting six hours during the workday, although plaintiff was limited to climbing, stooping and crouching only occasionally.  **(R. 239-241).**  Plaintiff's radiculopathy, pain and lumbar tenderness were noted, as well as the fact that additional surgery was being considered.  **(R. 246).**  Still, plaintiff could ambulate without an assistive device, albeit with a limp, and he could walk on his heels and toes, and was also able to squat.  **(R. 246).**  Dr. Julio opined that plaintiff was capable of sedentary work.  **(R. 246).**

On November 2, 2005, plaintiff had a third surgery, a lumbar interbody fusion at L4-5, whereby a cage and plate were put in place.  **(R. 249-250).**  At that time, the nerve root was "fine" and "well decompressed."  **(R. 250).**  Dr. Cushman, plaintiff's surgeon, noted on December 19, 2005, that plaintiff's back was minimally tender, he was ambulating well, there was no weakness in plaintiff's legs, and he could get up and down well.  **(R. 256).**  Dr. Cushman planned to gradually wean plaintiff off his back brace, start gentle exercises, and review plaintiff's status in one month to determine whether physical therapy was needed, or if plaintiff could return to work.  **(R. 256).**  On January 26, 2006, images of plaintiff's lumbar spine showed good position and alignment, and a stable fusion at L4-5.  **(R. 319).**  From Dr. Cushman's perspective, plaintiff had reached maximum medical improvement by March 17, 2006.  **(R. 314).**  Plaintiff was deemed to have 25% impairment to the body as a whole, and vocational rehabilitation was recommended, although Dr. Cushman also thought plaintiff was "able to

---

[2]The Court believes that the doctor's name is actually "Julio Pardo," but will use the name that appears on the doctor's report.

return to work for the barge company." **(R. 314)**.  X-rays of plaintiff's hip suggested an area of avascular necrosis, but upon examination plaintiff was ambulating well, despite complaints of pain and "popping." **(R. 316 and 318)**.  Dr. Cushman did not consider plaintiff's hip pain to be "anything serious," and thought it could be treated with anti-inflammatory medication and physical therapy.  **(R. 314).**

X-rays taken one year after Dr. Cushman's evaluation revealed normal alignment of plaintiff's vertebral column, and a slight narrowing at L5-S1.  **(R. 338).**  At that time, Dr. Jack Tippett performed a consultative examination.  Dr. Tippett's report, dated March 19, 2007, notes that plaintiff gets up slowly, never stands completely erect, bending slightly forward, and he walks without a limp, and without any assistive device.  **(R. 327).**  Plaintiff was not able to assume a full squat position, and could bend from the waist to his knees.  **(R. 327-328).**  Plaintiff reported severe back pain, but he was able to get on and off the exam table without assistance. **(R. 328).**  Plaintiff's lower back was characterized as "rather board-like," with "no motion possible, with marked tenderness throughout.  **(R. 328).**   Plaintiff had normal range of motion in his hips. **(R. 328).**  Dr. Tippett concluded plaintiff could lift and carry up to 10 pounds occasionally, sit, stand and walk for 10 minutes at a time, sit a total of six hours during a workday, stand and walk only one hour during a workday, and walk only one block.  **(R. 332-334 and 337).**  Plaintiff was limited to using foot controls only occasionally, and postural limitations were imposed, such that plaintiff could never climb ladders, balance, stoop or crouch, and he could only occasionally climb stairs and ramps, kneel and crawl.  **(R. 334-335).**  At that time, plaintiff was taking Darvocet, Mobie, Proplex and Ibuprofen for pain, and Tizandine for swelling.  **(R. 119 and 350).**

In February 2007, an evidentiary hearing was held before ALJ Bryan. **(R. 341-359).** Plaintiff reported that his wife had driven him the 30-40 minutes to the hearing, as he seldom drives. **(R. 342-343).** At that time, plaintiff was 36 years old, and he had a high school education. **(R. 343).** Plaintiff testified that he spends his days primarily watching television, laying or sitting on the couch, wearing his pajamas. **(R. 344 and 353-354).** Plaintiff explained that he cannot sit or stand for long periods due to constant back and leg pain, which he relieves by lying down. **(R. 346-347 and 351).** Plaintiff estimated he could walk only half a block, and that he was limited to sitting and standing for no more than 10 minutes, and was unable to stoop or lift anything. **(R. 346 and 352).** Plaintiff stated that physical therapy has not provided relief and his pain was only relieved "a bit," despite receiving nerve-block injections and being on Darvocet, Mobie, Trazadone, Proplex and Tylenol, **(R. 325 and 348-351).** Plaintiff opined that he was not capable of even sitting and answering telephones, because he has to alternate between sitting, standing and lying down. **(R. 347).**

Plaintiff's wife verified his testimony. **(R. 357).** She also testified that plaintiff does not want her to see him cry from the pain. **(R. 358).**

## ALJ Bryan's Decision

In a written decision dated May 31, 2007, ALJ Thomas R. Bryan ruled that, although plaintiff had degenerative disc disease of the lumbar spine and lumbar spondylosis with radiculopathy, he was not entitled to disability benefits for any period of time. **(R. 14-21).** Rather, plaintiff was found to have the residual functional capacity for sedentary work, albeit

with only occasional climbing, stooping and crouching.[3] **(R. 17).** In reaching that conclusion, ALJ Bryan discounted Dr. Tippett's evaluation, finding it "inconsistent with objective evidence of record;" and the ALJ found plaintiff's subjective allegations regarding pain and limitation not credible. **(R. 19-20).** Instead, the ALJ found the agency physicians' evaluation persuasive. **(R. 20).** Relative to plaintiff's complaints of persistent pain and impairment, the ALJ observed that following his last surgery, plaintiff has not required emergency room visits or hospitalizations for chronic pain. **(R. 19).**

Although plaintiff was found to be incapable of performing his past work, given his "younger" age and education, in accordance with Medical-Vocational Rules, regardless of transferrable skills, a decision of not disabled was dictated. **(R. 20;** *see also* **20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 201.27-201.29).** The ALJ then took administrative notice of the fact that a significant number of jobs exist in the national economy that comport with the full range of sedentary work. **(R. 21).** Consequently, plaintiff was found not to have been under a disability from May 30, 2004, through the date of decision. **(R. 21).**

The Appeals Council denied plaintiff's request for review. **(R. 3).**

## The Standard of Review

To be entitled to disability insurance benefits the claimant must establish that he is "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." **20 C.F.R. § 404.1567(a).**

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." **42 U.S.C. § 423(d)(1)(A).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. *See Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *see also* **20 C.F.R. § 404.1520(b-f).**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether plaintiff is in fact disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. *See* ***Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).** The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence" the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384,**

1390 (7th Cir. 1997).  Furthermore, an ALJ may not disregard evidence when there is no contradictory evidence.  *Sample v. Shalala*, 999 F.2d 1138, 1143 (7th Cir. 1993).

A negative answer at any point in the five step analytical process, other than at the third step, stops the inquiry and leads to a determination that the claimant is not disabled.  *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).  If a claimant has satisfied steps one and two, he or she will automatically be found disabled if he or she suffers from a listed impairment (step three).  If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at step four to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (**the burden of proof remains with the claimant through the fourth step**).

Although the standard of review applied by this reviewing court requires the ALJ's decision to be supported by substantial evidence, an ALJ utilizes a preponderance of the evidence standard, the default standard in civil and administrative proceedings.  *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996).

<u>**Analysis**</u>

Steps 1-3 of the five step analytical framework are not disputed and therefore the Court's analysis will pertain to step 4, regarding whether plaintiff can perform past work, and step five, whether plaintiff is capable of performing any work within the economy, given his or her age, education and work experience.  There is actually no dispute that plaintiff cannot perform his past work as a deckhand, which was performed at the "very high" exertional level.  Rather, the

key dispute is over whether plaintiff has the residual functional capacity for sedentary work.

Residual functional capacity is an *administrative assessment* of what work-related activities a claimant can perform despite his or her limitations.  *See* **20 C.F.R. § 404.1545(a); and** *Dixon v. Massanari***, 270 F.3d 1171, 1178 (7th Cir. 2001).**  "In assessing the claimant's [residual functional capacity], the ALJ must consider both the medical and nonmedical evidence in the record." *Id.*   A treating source's opinion will generally be given controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. . . ." **20 C.F.R. § 404.1527(d)(2);** *Simila v. Astrue***, 573 F.3d 503, 514 (7th Cir. 2009).**  However, in accordance with Section 404.1527(f)(2), state agency physicians are deemed experts in Social Security disability evaluation, and an ALJ may rely on their opinions, provided the usual evidentiary support is present and the ALJ explains the weight given to the agency physician's opinion.

The law does not *require* an ALJ to accord a treating physician's opinion more weight than a consulting physician's opinion.  *Simila v. Astrue***, 573 F.3d 503, 514 (7th Cir. 2009)**;  *White v. Barnhart***, 390 F.3d 500, 503 (7th Cir. 2005);** *Micus v. Bowen***, 979 F.2d 602, 608 (7th Cir. 1992).**  An ALJ weighs conflicting evidence from medical experts, and a reviewing court may not re-weigh the evidence.  *Young v. Barnhart***, 362 F.3d 995, 1001 (7th Cir. 2004).**  However, "[a]n administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart***, 345 F.3d 467, 470 (7th Cir. 2003).**

Social Security Rule 96-7p requires an ALJ to specifically articulate the rationale for any credibility determination relative to the consideration of pain and its functional effects.  ***Brindisi v. Barnhart***, 315 F.3d 783 (7th Cir. 2003).

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." ... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

***Brindisi***, **315 F.3d at 787 (quoting from SSR 96-7p).**

Plaintiff was deemed able to return to work as a deckhand shortly after his first surgery– that is, until he slipped and fell, sustaining an injury to the left of the operative site.

One month after the second surgery in March 2005, plaintiff's radicular leg pain was resolved, and from his surgeon's perspective (confirmed by x-rays), all was normal.  Still, plaintiff complained of back and hip pain, for which physical therapy was prescribed.  An August 2005 questionnaire completed by plaintiff in connection with his application for benefits reflects that he could not lift anything, nor could he sit or stand for long, and he needed to hold onto things to walk, yet he did not use an assistive device.  Two months later, an agency physician, Dr. Julio, acknowledged that additional surgery was being contemplated, but concluded plaintiff could lift up to 10 pounds, and sit, stand and walk to the degree required for sedentary work.  Based on the objective evidence in the record at that juncture, the agency physician's evaluation is sound.  There is a surprising lack of evidence in the record in the form

of test results and/or notations to support plaintiff's subjective complaints of pain and impairment. One can certainly be able to work, yet still need surgery.

At the time of the third surgery on November 2, 2005, Dr. Cushman noted that the nerve root was well decompressed, and by December 19th plaintiff was reported to be ambulating well, experiencing no leg weakness, and was also able to get up and down well. Dr. Cushman's notation indicates there was even a possibility no physical therapy would be needed and that plaintiff could return to work. By March 17, 2006, Dr. Cushman concluded maximum medical improvement had been reached, and plaintiff's hip pain was characterized as nothing serious, to be treated with anti-inflammatory medication and physical therapy. Dr. Cushman did not specifically ascribe any limitations to plaintiff.

Insofar as Dr. Cushman deemed plaintiff to be 25% impaired, by definition that should indicate:

> both radiculopathy and alteration of motion segment integrity are present; significant lower extremity impairment is present as indicated by atrophy or loss of reflex(es), pain, and/or sensory changes with anatomic distribution (dermatomal), or electromyographic findings . . . and alteration of spine motion segment integrity....

**(Doc. 16-1, p. 1(Guide to the Evaluation of Permanent Impairment, § 15.4)).** Dr. Cushman's records do not appear to substantiate that rating. In any event, as the Guide to the Evaluation of Permanent Impairment explains, "work is not included in the clinical judgment of impairment percentages," "a 30% impairment rating does not correspond to a 30% reduction in work capability;" "impairment ratings are not intended for use as direct determinants of work disability." **(Doc. 16-2 (Guide to the Evaluation of Permanent Impairment)).** Therefore, if

the ALJ ascribed any weight to the 25% rating, that would have been too much weight–regardless of whether the ALJ correctly understood the import of the rating.

Plaintiff did not seek further treatment from Dr. Cushman during the following year–which speaks volumes. X-rays a year later, in March 2007, showed normal alignment and only a slight narrowing at L5-S1. When Dr. Tippett evaluated plaintiff at that time, plaintiff was bent slightly forward, but he did not have a limp and did not require an assistive device. Plaintiff did not have full range of motion, in that he could not assume a *full* squat, and could only bend from his waist down to his knees. However, he could get on an off the exam table without assistance and had normal range of motion in his hips. Yet, Dr. Tippett opined plaintiff could *never* stoop or crouch. Thus, plaintiff's postural limitations appear to have been overstated by Dr. Tippett.

Dr. Tippett thought plaintiff could lift up to 10 pounds, but he opined that plaintiff could only sit, stand and walk for 10 minutes at a time, although he could sit for a total of six hours during a workday. The ALJ correctly notes that there is no objective medical evidence to support that evaluation. Furthermore, during the February 2007 evidentiary hearing plaintiff has testified that it was a 30-40 minute drive to the hearing, with no mention of breaks– reflecting an ability to sit for longer than Dr. Tippett's ten minute estimation. Dr. Tippett's limitations appear to merely mirror plaintiff's perspective of his abilities. An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations. ***See Diaz v. Chater*, 55 F. 3d 300, 308 (7th Cir. 1995).**

The ALJ correctly observed that the objective medical evidence did not support impairment to the degree that plaintiff described. The fact that Dr. Cushman's November 2005 and March 2006 medical notations are consistent, in that they reflect that plaintiff's back was

structurally stable and without nerve compression, and that plaintiff could return to work. As noted above, the 25% impairment was not a reflection of plaintiff's ability to work. Although Dr. Tippett reached an entirely different conclusion one year later, the objective evidence did not indicate a change in plaintiff's back. The only thing that substantiates Dr. Tippett's opinion about plaintiff's limitations is plaintiff's statement(s), and the ALJ concluded that plaintiff was not credible.

Again, the objective medical evidence and treatment notes do not come close to supporting plaintiff's statements of pain and limitation. It is the dramatic chasm between what the medical records reflect and plaintiff's claims that doom his claim at every turn. The ALJ did not merely reject plaintiff's statements in favor of the objective evidence, which is impermissible. *See* **20 C.F.R. 404.1529(c)(3).** Plaintiff claimed to need to hold onto things when he walked, to not being able to lift anything, and to essentially spend his days shifting between sitting, standing and walking every ten minutes. Yet, his treating doctors did not note such complaints; they did not prescribe an assistive device; and plaintiff was able to sit for the 30-40 minute drive to the evidentiary hearing. Plaintiff vouched for plaintiff's testimony, and suggested that his pain was so bad he was brought to tears. Again, such statements seem incredible in view of the totality of the evidence.

Insofar as plaintiff remained on pain medication, and was rendered drowsy by the Darvocet, it is noted that he never complained about the side effects to his doctors, and his testimony did not indicate the drugs had such an impact. Plaintiff does not specifically argue that the impact of plaintiff's medication was not properly evaluated.

There is substantial evidence to support the ALJ's conclusions regarding plaintiff's

14

credibility (and the credibility of his wife), and for the ALJ's reliance on the agency physician's evaluation and rejection of Dr. Tippett's one-time evaluation (which relied heavily on plaintiff's subjective account of his condition). Moreover, there is nothing in Dr. Cushman's records to suggest that plaintiff's residual functional capacity was altered between the second and third surgeries. Dr. Julio's evaluation is consistent with Dr. Cushman's last opinion. Furthermore, there is nothing–aside from plaintiff's discredited opinions–to suggest that anything occurred in the subsequent year to alter plaintiff's status. Thus, Dr. Julio's opinion constitutes substantial evidence for purposes of review.

With respect to plaintiff's postural limitations, Dr. Julio thought plaintiff should be limited to climbing, stooping and crouching only occasionally; after the third operation, Dr. Cushman observed plaintiff had no leg weakness and could get up and down well; and Dr. Tippett concluded that plaintiff could never climb ladders, balance, stoop or crouch. Plaintiff disputes whether the ALJ adequately explained why Dr. Julio's limiting plaintiff to occasional stooping prevailed over Dr. Tippett's complete bar to stooping. The ALJ's opinion noted Dr. Tippett's opinion that plaintiff should never stoop, but rejected Tippett's entire evaluation without addressing stooping in particular. The ALJ noted that Dr. Tippett only examined plaintiff the one time, and that plaintiff's allegations of limitation were somewhat greater than would reasonably be expected from the objective and other record evidence. The ALJ found Dr. Julio's opinion to be most accurate. This rationale is sufficient, in that if plaintiff were found not to be credible, it is reasonable to conclude that when he appeared for a consultative exam he did not present himself accurately, and as noted above, an ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations. That is a

sufficiently clear basis for discounting Dr. Tippett's opinion regarding stooping. This Court observes that Dr. Tippett's conclusion that plaintiff should never stoop seems inconsistent with his simultaneous observation that plaintiff could partially squat, and that he could bend from the waist down to his knees, and still had a full range of motion in his hips.

As discussed above, the ALJ found plaintiff not credible, and consequently discounted Dr. Tippett's opinion that plaintiff could only sit, stand or walk for 10 minutes at a time. Therefore, the ALJ did not have to concern himself with plaintiff's allegation that he had to alternate between sitting, standing and lying down. Similarly this Court cannot analyze plaintiff's argument further, except to note that if the District Court opts to accept Dr. Tippett's evaluation, the range of sedentary work would be altered and, at a minimum, a vocational expert would have to be consulted because the sedentary job base would be eroded substantially. *See* **SSR 83-12 (Special Situations: (1) Alternate Sitting and Standing); and SSR 96-9p.**

Having concluded that plaintiff had the residual functional capacity for sedentary work (with occasional postural limitations), at step five in the sequential analysis, the ALJ had to determine whether plaintiff could do any other work that exists in the national or regional economy. *See* **20 C.F.R. § 404.1520(a)(4)(v) and (e).** To this end, the ALJ may use "the grids" to determine whether other jobs exist in the national or regional economy that a claimant can perform. The ALJ must consider the plaintiff's residual functional capacity, age, education and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. **20 C.F.R. §§ 404.1560(c) and 404.1566.** Plaintiff argues that the ALJ should also have used a vocational expert in light of plaintiff's "significant" postural limitations. Plaintiff points the Court to an unpublished, non-precedential decision, *Borski v. Barnhart*, 2002

WL 521379 (7th Cir. 2002). **(Doc. 16-3).** Although *Borski* is not controlling, it presents a factual scenario that is useful for purposes of discussing the situation at bar.

As noted above, *if* plaintiff needed to alternate sitting and standing, or he could not stoop, a vocational expert would have to be consulted because the sedentary job base would be eroded substantially. *See* **SSR 83-12 (Special Situations: (1) Alternate Sitting and Standing); and SSR 96-9p.** In *Borski*, the Court of Appeals for the Seventh Circuit explained that, "[w]here scheduled breaks are not enough, the applicant needs a so-called 'sit/stand option.' That takes the case out of the grid and requires the input of a vocational expert." ***Borski*, \*4.** In *Borski*, the appellate court found there was an insufficient basis in evidence and discussion for the ALJ's conclusion that the claimant could occasionally stoop and that he was capable of fulfilling the frequent sitting and occasional standing requirements of sedentary work. *See* **20 C.F.R. § 404.1567(a).** Thus, the case was remanded. As discussed above, the ALJ's decision in the case at bar passes muster and, after reading the whole record, it is quite clear that the evidence supports the ALJ's decision.

Dr. Julio's evaluation, which was adopted by the ALJ, indicates plaintiff is capable of standing for a total of two hours and standing for a total of six hours, with normal breaks. **(R. 240).** Plaintiff was further limited to only "occasionally" climbing, stooping and crouching. **(R. 241).** The ALJ stated that the additional occupational limitations had "little or no effect" on the occupational base of unskilled sedentary work, thereby allowing use of the grid. **(R. 21).**

"The [Residual Functional Capacity] addressed in a rule establishes the presence of an occupational base that is limited to and includes a full range (all *or substantially all*) of the unskilled occupations existing at the exertional level in question." **SSR 83-10 (emphasis**

**added).**

> The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *By its very nature, work performed primarily in a seated position entails no significant stooping.* Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required *"occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.* Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

**SSR 83-10 (emphasis added).**

Plaintiff's emphasis on his purported inability to stoop is misplaced, in that stooping is not crucial to sedentary work. Similarly, limitations on climbing and crouching do not impact the core requirements of sedentary work. Thus, the ALJ's decision is on firm legal ground in that respect. Dr. Julio's evaluation indicates plaintiff could fulfill the sit/stand requirements of sedentary work. Having found the ALJ's reliance on Dr. Julio's opinion appropriate, it follows that his use of the grid was appropriate. Again, the crucial finding here is that the objective medical evidence and treatment notes do not support plaintiff's subjective complains relative to the degree of pain and impairment, and that there is insufficient evidence that plaintiff's limitations worsened after the second surgery and after Dr. Julio's evaluation. The fact that plaintiff had multiple surgeries is a "red herring," in that the issue is actual disability.

The ALJ set forth the evidence and methodically explained his reasoning in a manner consistent with the aforementioned legal standards– even if plaintiff disagrees with the ALJ's

conclusions.  One need only read the ALJ's opinion in order to refute the assertion that the ALJ did not adequately explain his reasoning, providing the required logical bridge between the evidence and the conclusion that plaintiff was not disabled.

Insofar as plaintiff's brief intimated that he should have at least been granted a period of disability, that point was not presented as an issue for decision and is therefore not properly before the Court.

## Recommendation

For the aforestated reasons, it is the recommendation of this Court that plaintiff Kendel Stafford's motion for summary judgment **(Doc. 16)** be denied, and that the decision of the Commissioner of Social Security to deny plaintiff Disability Insurance Benefits or a Period of Disability be affirmed in all respects.  If this recommendation is adopted, final judgment in favor of the defendant and against plaintiff should be entered.

**DATED:  February 12, 2010**

> **s/ Clifford J. Proud**
> **CLIFFORD J. PROUD**
> **U. S. MAGISTRATE JUDGE**

## Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(d), the parties shall file (meaning receipt by the Clerk of Court) any objections to this report and recommendation on or before **March 1, 2010**.  No extensions will be granted.